502 A.2d 206

**Emmanuel JOHNSON, a Minor, by His Parent and Natural Guardian, Emma JOHNSON and Emma Johnson in Her Own Right, Appellant**

v.

**The TRAVELERS.**

Superior Court of Pennsylvania.

Argued Aug. 6, 1985.

Filed Dec. 13, 1985.

Paul M. Perlstein, Philadelphia, for appellant.

George S. Donze, Philadelphia, for appellee.

Before SPAETH, President Judge, and WICKERSHAM, BROSKY, ROWLEY, WIEAND, CIRILLO, OLSZEWSKI, BECK and TAMILIA, JJ.

TAMILIA, Judge:

On June 26, 1981, appellant Emmanuel Johnson, a minor, was struck by an uninsured motor vehicle, sustaining injuries for which he and his mother, appellant Emma Johnson, sought compensation under the Pennsylvania Assigned Claims Plan, (PACP). Because no settlement could be reached with the designated obligor/appellee, Travelers Insurance Co., appellants sought binding arbitration. Their demand was never acknowledged by appellees, and a subsequent Petition to Compel Arbitration was denied by the lower court. This appeal followed, presenting us with the question of the procedure to be followed by a victim seeking to enforce his rights to uninsured motorist benefits.

■ Prior to reaching the procedural issue which is the crux of this appeal, however, we must address the threshold question presented by appellee's motion to dismiss for failure to file exceptions to the trial court's order refusing to appoint an arbitrator. Appellees argue that *Distler v. Pa. Assigned Claims Plan*, 318 Pa.Super. 487, 465 A.2d 658 (1983), and *Jones v. State Automobile Ins. Assoc.*, 309 Pa.Super. 477, 455 A.2d 710 (1983) present the governing authority. The latter case held that an action for benefits under the No-Fault Insurance Act cannot be by petition and rule, but must be commenced by complaint in assumpsit, and therefore, necessarily involves adherence to Rule 1038,

which requires the filing of exceptions in order to preserve issues for appellate review. *Distler* posits a corollary to this rule, which states that the erroneous filing of a no-fault benefits petition is a waivable defect.[1] In neither of these cases, however, was the issue, as here, one concerning the requisite procedural sequitur to a demand for arbitration. In *Distler*, the issue was the appointment of an insurance company to represent an uninsured motorist claim, and in *Jones*, it was the propriety of utilizing petition and rule to commence an action for first party no-fault benefits.

Appellee assumes, somewhat prematurely, that because arbitration is an inappropriate means of resolution in the circumstances of this case, that its impact as a factor in these proceedings is negligible in all respects.

This issue is directly addressed by 42 Pa.C.S.A § 7320(a)(1), which provides that:

### § 7320. Appeals from court orders

(a) General rule.—An appeal may be taken from:

(1) A court order denying an application to compel arbitration made under section 7304 (relating to proceedings to compel or stay arbitration).

This section is similarly applicable to common law arbitration, *see* 42 Pa.C.S.A. § 7342(a), although its reverse is not true. *See Gardner v. Prudential*, 332 Pa.Super. 358, 481 A.2d 654, 655 (1984).

*Haegele v. Pa. General Ins. Co.*, 330 Pa.Super. 481, 479 A.2d 1005 (1984) provides us with a persuasive analogue. In *Haegele*, this Court found that a petitioner, whose re-

---

1. The appellant in *Distler* actually sought uninsured motorist benefits, as does appellant herein, rather than no-fault benefits. The trial court held that although appellee had waived the defect in appellant's implementation procedure, the final order appealed from had to be entered prior to the decision in *Floczak v. Nationwide Mutual Insurance Co.*, 289 Pa.Super. 438, 433 A.2d 885 (1981), in order for the waiver to take effect. Since the Order had been entered after *Floczak,* appellee's waiver was obviated, and the appeal was consequently quashed. We note that *Floczak,* in which this Court held that a claim for no-fault benefits could only be instituted by praecipe for writ of summons or complaint, provides the major underpinning for the Order denying arbitration in the instant case.

quest to vacate or modify an arbitrator's award had been denied, need not file exceptions to the denial Order, since the action was governed by petition practice, which was in turn the proper avenue of relief for arbitration problems.

What becomes crucial then is the subject matter of the petition, that is arbitration, rather than its appropriateness as a procedural vehicle. Once a question of arbitration arises it activates, according to the nature of the claim, either the petitioning mechanism of *Haegele* if arbitration has occurred, or, if arbitration is sought and denied, the immediate appeal approved by the Rule.[2] The existence of a petition, in and of itself, is insufficient as a determinant of what must properly follow. We, therefore, deny appellees' motion to quash this appeal.

As to the merits of this appeal, appellant bases his argument on the landmark case of *Tubner v. State Farm Mutual Insurance Co.*, 496 Pa. 215, 436 A.2d 621 (1981). In that case, our Supreme Court interpreted the No-Fault Motor Vehicle Insurance Act, 40 P.S. § 1009.101 et seq. (repealed eff. October 1, 1984), as requiring assigned insurers to pay both basic loss and uninsured motorist benefits as if a policy of insurance had been issued including both types of coverage (40 P.S. § 1009.108(b)). Applying the theory of implied contract as his major premise, appellant reasons, using regulatory language of the Pennsylvania Code, that, "all basic loss policies issued in Pennsylvania must also provide for binding arbitration[3] to resolve dis-

2. This, of course, assumes that arbitration is a proper means of resolution in the context. As will appear below, in cases such as the one before us, it is not.

3. Per 31 Pa.Code § 63.2 Exhibit C, III.8.
   **8. Arbitration.** If any person making claim hereunder and the company do not agree that such person is legally entitled to recover damages from the owner or operator of an uninsured automobile because of bodily injury to the insured, or do not agree as to the amount of payment which may be owing under this endorsement, then, upon written demand of either, the matter or matters upon which such person and the company do not agree shall be settled by arbitration in accordance with the rules of the American Arbitration Association, and judgment upon the award rendered by the arbitrators may be entered in any court having jurisdiction thereof. Such person

putes regarding the entitlement to uninsured motorist benefits, a *fortiori*, the right to *Tubner* mandated uninsured motorist benefits must be enforced exclusively by binding arbitration." (Appellant's brief at 5). Although appellant's logic is syllogistically sound, its conclusion misses the mark.

■ There are two reasons for this. The first is that "... the statute that requires uninsured motorist coverage, Act of Aug. 14, 1963, as amended, 40 P.S. § 2000(a), does not require arbitration, and we have held that *in the absence of statutory requirement, arbitration may not be required by regulation. Ellison v. Safeguard Mutual Ins. Co.*, 209 Pa.Super. 492, 229 A.2d 482 (1967)." *Hiller v. Allstate Ins. Co.*, 300 Pa.Super. 149, 151 n. 1, 446 A.2d 273, 274 n. 1 (1982). (Emphasis added). "As a general rule, questions under an uninsured motorist clause with an arbitration provision are within the exclusive jurisdiction of the arbitrators" (citations omitted). *White v. Concord Mutual Insurance Co.*, 296 Pa.Super. 171, 175, 442 A.2d 713, 715 (1982) (underinsured is not to be equated with uninsured). *See also State Farm Insurance Co. v. Bullock*, 316 Pa.Super. 475, 463 A.2d 463 (1983) (insolvency of defendant's insurance company permits recovery by plaintiff under her uninsured motorist coverage and is subject to arbitration). However, the courts will take jurisdiction if the claimant attacks a particular provision of the clause "as being contrary to a constitutional, legislative, or administrative mandate." *White, supra*, 296 Pa.Superior Ct. at 176, 442 A.2d at 713, 716. In a similar fashion, where the essential ingredient to trigger the operation of a statute, the clause in a contract requiring arbitration of an uninsured motorist's claim, is absent, as there is no contract of reference, the No-Fault Statute Assigned Claims Plan, 40 P.S. § 1009.-108, and the uninsured motorists coverage, 40 P.S. § 2000(a), cannot be read together as having the missing

and the company each agree to consider itself bound and to be bound by any award made by the arbitrators pursuant to this endorsement.

ingredient (contract) supplied by an insurance department regulation. *Ellison, supra.* In *Tubner,* relied upon by appellant, it is true that the claimant was an uninsured victim of an uninsured driver and that the Supreme Court held that such a claim, in addition to basic loss benefits, qualified for uninsured motorist benefits under the assigned claims plan, as *coverage* which would have been required had there been a policy of insurance. This was determined to be the intent of the no-fault legislation. "Because assigned insurers are obligated precisely *as if they had issued basic loss insurance policies,* and because *every* policy of basic loss insurance issued in Pennsylvania *must include uninsured motorist coverage,* the right to uninsured motorist benefits under the assigned claims plan follows *a fortiori* from a straightforward reading of the statute and the regulation lawfully promulgated thereunder." *Modesta v. SEPTA,* 503 Pa. 437, 443 n. 6, 469 A.2d 1019, 1023 n. 6 (1983), quoting *Tubner, supra,* 496 Pa. at 219, 436 A.2d at 623. This language makes clear the position we must adopt here, that is, the extent of coverage is determined by the statute and while the statute may infer a policy of insurance, *Tubner, supra,* where it is silent as to the procedure for recovery, this may not be inferred in derogation of constitutional rights. Thus while the legislation provided for *coverage,* no where in the No-Fault Act or the Uninsured Motorists Coverage Act is there a provision requiring arbitration when a policy of insurance did not, in fact, issue, containing a clause requiring arbitration.

To require by regulation what the legislature omitted from statute is an unlawful delegation of powers to the insurance commissioner. "When the General Assembly failed to include this essential [arbitration] requirement in its enactment neither the executive nor the judiciary may under the guise of interpretation or public policy apply it." *Ellison,* 209 Pa.Superior Ct. at 496, 229 A.2d at 484. Further, as the lower court points out, "we cannot abridge defendant's constitutional right to a trial by jury where no

actual contract exists between the parties." (Slip Op. at 3). Nor, in fact, may the legislature, through the proxy of the Insurance Commission regulation, infringe upon that right.

It is clear that although the benefits conferred upon the victims of motor vehicle accidents by the *Tubner* decision are consistent with the legislative policy motivating the No Fault Act, the aim of that Act was not to penalize obligors, assigned or contractual, but simply to provide basic coverage for all "... motor vehicle accident victims and the survivors of deceased victims." 40 P.S. § 1009.102(b). While this intention, once implemented, may incidentally inure to the detriment of the insurers (and in some cases, provide greater benefits to an uninsured than an insured, *White*, at 719), who are after all in the business of providing insurance and aware of its risks, their punishment is not the statutory objective. If the defendant/insurer's right to trial by jury is bargained away, and indeed paid for, through negotiation of an insurance contract to which the litigating parties are signatory, deprivation of rights becomes voluntary waiver. In a similar fashion, the parties may waive the right to trial by entering into an arbitration proceeding despite the absence of contract. The PACP designation process does not offer an acceptable approximation of a volitional act, however desirable the administrative effects may be of arbitration as opposed to trial, and a regulation does not correct its deficiencies.

■ We, therefore, hold that the procedure to be followed in enforcement of uninsured motorist benefits, absent an actual contract containing an arbitration clause, as against the assigned obligor, is the filing of a complaint in assumpsit.

Order affirmed.

Case remanded for proceedings consistent with this Opinion.