393 A.2d 1131

PENNSYLVANIA ASSOCIATION OF LIFE UNDERWRITERS, Roger B. Jacoby, Clu, Robert F. Seiler, Ernest M. Boll, Clu, James W. Shindler, George G. Pote, Clu, John D. Hopper, Clu and James A. Pellow, Clu, Appellants,

v.

COMMONWEALTH of Pennsylvania, DEPARTMENT OF INSURANCE, William J. Sheppard, Insurance Commissioner.

Supreme Court of Pennsylvania.

Argued May 25, 1978.

Decided Oct. 5, 1978.

Reargument Denied Nov. 8, 1978.

Thomas R. Balaban, Shaffer, Calkins & Balaban, Harrisburg, for appellant.

Guy de Pasquale, Chief Counsel, Deputy Atty. Gen., John H. Isom, Asst. Atty. Gen., for appellee.

Robert L. Pratter, Duane, Morris & Heckscher, Philadelphia, for amicus, the Ins. Federation of Pa.

Before EAGEN, C. J., and O'BRIEN, ROBERTS, POMEROY, NIX, MANDERINO and LARSEN, JJ.

OPINION OF THE COURT

PER CURIAM:

Decree Affirmed.

Each party to pay own costs.

MANDERINO, J., filed a dissenting opinion in which POMEROY and LARSEN, JJ., joined.

MANDERINO, Justice, dissenting.

The singular issue raised by this appeal is whether the Insurance Commissioner has the authority to promulgate regulations requiring insurance agents and companies to make certain affirmative disclosures to prospective purchasers of life insurance policies prior to sale. The facts of the case are not in dispute.

The Commissioner promulgated the regulations in question, entitled Disclosures in Solicitation of Life Insurance, 31 Pa.Code § 83, with effective date of December 14, 1975. The purpose of the regulations is to prevent insurance consumers from being confused and misled by the multiplicity of insurance "packages" available on the market today. These regulations require state licensed agents, brokers and insurers to provide detailed disclosure statements to potential buyers of life insurance policies prior to sale, which statement would disclose, in standardized form, information pertaining to amounts of, and conditions attached to, coverages, benefits, premiums, dividends and other terms and provisions of the policy. Thus, a consumer would be able to "shop around" for the optimum policy.

This Court has said many times that administrative agencies "can only exercise those powers which have been conferred upon [them] by the Legislature." *Pa. Human Relations Comm'n. v. Zamantakis*, 478 Pa. 454, 387 A.2d 70, 72 (1978) (citations omitted). We have also stated that it is possible to imply certain powers from the enabling legislation. However, this implication must be manifest. *Green v. Milk Control Commission*, 340 Pa. 1, 16 A.2d 9 (1940), *cert. denied*, 312 U.S. 708, 61 S.Ct. 826, 85 L.Ed. 1140 (1941).

> "The principle guiding to decision is this: The power and authority to be exercised by administrative commissions must be conferred by legislative language clear and unmistakable. A doubtful power does not exist." Id., 340 Pa. at 3, 16 A.2d at 9.

In this case, the legislature in The Unfair Insurance Practices Act, 40 P.S. § 1171.1—15 (Supp. 1978–79) (UIPA), specifically enumerated a very long list of unfair methods of

competition and unfair or deceptive acts or practices. 40 P.S. § 1171.5. Nowhere in the UIPA is there any grant of authority for the Commission to add to that list nor is such authority *necessarily* implied anywhere in the act. "Only those powers within the legislative grant, either express *or necessarily implied*, can be exercised by the administrative body." *Pennsylvania Human Relations Comm'n. v. St. Joes Minerals Corp.*, 476 Pa. 302, 310, 382 A.2d 731, 736 (1978) (Citations omitted; emphasis added).

Moreover, other factors demonstrate that the legislature intended to withhold from the Commissioner authority to determine unfair methods through general rule-making.

First of all, when the legislature intends to grant rule-making authority, it usually does so in no uncertain terms.

Second, the legislature has, for reasons which are not at liberty to question, used a different approach when granting rule-making authority to the Insurance Commissioner. Numerous enactments have been passed giving the Commissioner power to promulgate rules and regulations in specified areas (appellant's brief lists twenty-two such enactments, Brief for Appellant, Appendix II). The specificity of these sections of the insurance laws negates appellee's argument that the Commissioner has been granted general rule-making authority in the area covered by the UIPA.

The third, and perhaps most persuasive, indication of legislative intent can be found in the legislative history of the UIPA. The initial versions of the UIPA, S.B. 561, regulated the writing, cancellation, or refusal to renew insurance. The earlier versions of the UIPA contained the following grant: "The Insurance Commissioner shall promulgate rules and regulations necessary for the administration of this Act." Subsequent versions, however, expanded the scope of the UIPA to cover a wide range of unfair methods, but *removed* the general grant of rule-making authority. The enacted version we review today contains only the *limited* grant of authority to promulgate specific rules. "A change in the language of a statute ordinarily indicates a change in legislative intent." *Masland v. Bachman*, 473 Pa. 280, 289, 374 A.2d 517, 521 (1977).

It is clear that the legislature did not intend for the Commissioner to have the power to promulgate regulations imposing affirmative duties of disclosure on an industry-wide basis. However desirable the Commissioner's goals may be, he is not the legislature. I dissent.

LARSEN and POMEROY, JJ., join in this dissenting opinion.